## GREELEY & a. *vs.* WYETH & a.

Where one partner, without the knowledge of his copartner, makes a special contract to perform labor, or sell goods of the partnership, and take pay in specific articles, for his own use ; and the contract is executed by the parties who make it ; an action cannot be maintained, in the name of the partners, to recover the value of the goods so sold or labor performed, on the ground that the partner had no authority to make such contract.

ASSUMPSIT, upon an account annexed to the writ, for work, &c. furnished by the plaintiffs, as blacksmiths.

The case was submitted to the determination of the court upon a statement of facts, by which it appeared that Greeley and Marckres, the plaintiffs, entered into partnership, in the blacksmithing business, January 1, 1836.

The blacksmith work was done by Marckers and hands employed and boarded by him. The stock was furnished and paid for by Greeley. The partnership was advertised, but no sign was up at the blacksmith shop. The parties all reside in Nashua. Marckres was dependent upon the proceeds of the shop for the support of his family and the hands who boarded with him, and he frequently allowed accounts against himself, individually, in the settlement of partnership accounts for work done at the shop. Greeley

in two or three instances made such settlements himself. The defendants, Wyeth and Simpson, are bakers, and Marckres took bread of them for the use of his family, during the partnership, with an express agreement between Marckres and the defendants that they were to take work at the shop in payment. Of this agreement Greeley had no knowledge. The work charged in the plaintiffs' account annexed to the writ is the same done in pursuance of the above agreement, and the amount of defendants' account for bread, delivered as aforesaid, exceeds that of the plaintiffs' now in suit.

The partnership between Greeley and Marckres has been dissolved, and their accounts are still unsettled, and the balance, after paying all the partnership debts, is doubtful.

If in the opinion of the court the above facts constituted a good defence to the action, judgment to be rendered in favor of the defendants for their costs, otherwise for the plaintiffs.

*Abbot & Fox*, for the plaintiffs.

*A. F. Sawyer*, and *Emerson*, for the defendants, cited 7 *N. H. R.* 343, *Russell* vs. *Convers & Trustee.*

PARKER, C. J. It was held, in *Holton* vs. *Smith*, 7 *N. H. R.* 446, that an agent, having a general authority to sell as such, has no right to sell the goods of the principal in payment of his own debt. But the authority of a partner is much more extensive than that of a mere agent. It has, however, been held that one partner cannot, even during the existence of the partnership, release a debt due to the firm, in consideration of a debt due from himself individually. 5 *Cowen's R.* 489, *Gram* vs. *Cadwell.* In that case a debt had once existed, due to the partnership, and the question was whether it had been paid. Another case, in which the facts somewhat more nearly resemble the present, is *Dob* vs. *Halsey*, 16 *Johns. R.* 34. There one partner delivered lum-

Greeley & a. *v.* Wyeth & a.

ber, belonging to the partnership, to a third person in payment of his individual debt, who received it knowing it to be partnership property. The other partners brought assumpsit for the price. The court, reasoning from the cases in which it is held that one partner cannot pledge the partnership credit for his private debt, were of opinion that the partner had no authority thus to dispose of the partnership property—that the defendant, when he purchased the lumber, became a debtor of the partnership—and that the debt due to the defendant could not be set off against the claim of the plaintiffs. In the present case, however, there was no previous debt due from the defendants to the partnership. Nor have they made any contract which can serve as the foundation of this suit. They received the articles charged, not on an ordinary contract to pay, by which a debt accrued to the partnership; but on a special contract, which has been fulfilled. On the supposition that Marckres had no authority, by virtue of the partnership, to make that contract, upon what ground can an implied contract, to pay the partnership in money, be raised out of the transaction? Where there is an express contract, the law will not raise an implied contract different from that which the parties have entered into, except it be upon some farther transaction between them. 6 *N. H. R.* 481, *Britton* vs. *Turner.* Marckres, as partner, had a right to contract for the work of the establishment. It does not appear that he was, by the terms of the partnership agreement, restricted to contracts by which money was to be received in payment. A contract by him, in which specific articles were to be received by the partnership, would have been binding; and if, by his agreement, those specific articles were to be delivered at his house, instead of the shop, and if the defendants had knowledge that he would probably consume them in his family, that does not seem to alter the case. He might appropriate to his own use any thing received in exchange for work or materials, without subjecting the party from whom he received it to an action in favor of the part-

nership ; and knowledge or suspicion that he intended to do so, instead of knowledge that he might do so, does not seem to change the nature of the case, if no fraud was practised by the defendants. What disposition he made of the money, or of specific articles which he received for work and labor or materials, was a matter between him and his partner, Greeley. The latter, by entering into partnership with him, trusted him thus far, and must look to the partnership account for remuneration.

There is another consideration, which does not seem to have been adverted to in Dob *vs.* Halsey, but which furnishes a decisive answer to this suit. How is Marckres, who is necessarily one of the plaintiffs, to sustain an action, either alone or with Greeley, against his own contract ? This matter was discussed in *Jones, assignee of Sykes & Bury*, vs. *Yates & Young*, 9 *Barn. & Cres.* 532. Sykes, Yates & Young carried on a trade in partnership, and Sykes was also in partnership with Bury. Sykes, being indebted to the firm of Sykes, Yates & Young, before the dissolution of that partnership, unknown to Bury, indorsed a bill, and paid over money (belonging to Sykes & Bury,) in discharge of the private debt due from himself to the partnership of Sykes, Yates & Young, and immediately afterwards indorsed the same bill to a creditor of the latter firm. The partnership between Sykes, Yates & Young having been dissolved, it was held that Sykes & Bury could not maintain trover against Yates & Young for the bill, nor assumpsit for the money thus paid by Sykes out of the funds of Sykes & Bury, in discharge of his private debt. Lord Tenterden said, in delivering the opinion—" We are not aware of any instance in which a person has been allowed, as plaintiff in a court of law, to rescind his own act, on the ground that such act was a fraud on some other person ; whether the party seeking to do this has sued in his own name only, or jointly with such other person. It was well observed, on behalf of the defendants, that where one of two persons, who have a joint right

of action, dies, the right then vests in the survivor ; so that, in this case (if it be held that Sykes & Bury may sue,) if Bury had died before Sykes, Sykes might have sued alone, and thus for his own benefit have avoided his own act by alleging his own misconduct. The defrauded partner may, perhaps, have a remedy in equity, by a suit in his own name against his partner and the person with whom the fraud was committed. Such a suit is free from the inconsistency of a party suing on the ground of his own misconduct. There is a great difference between this case and that of an action brought against two or more partners on a bill of exchange, fraudulently made or accepted by one partner in the name of the others, and delivered by such partner to a plaintiff in discharge of his private debt. In the latter case, the defence is not the defence of the fraudulent party, but of the defrauded and injured party. The latter may, without any inconsistency, be permitted to say in a court of law, that although the partner may for many purposes bind him, yet he has no authority to do so by accepting a bill in the name of the firm for his own private debt. The party to a fraud, he who profits by it, shall not be allowed to create an obligation in another by his own misconduct, and make that misconduct the foundation of an action at law.''

It is hardly necessary to add, that from the facts stated in this case, the assent of Greeley to the contract made with Marckres might well be presumed, even if he had no actual knowledge of the contract itself when it was made. Marckres boarded the persons employed in the shop. He was dependent upon the proceeds of the shop for the support of his family, and of the persons thus employed. Greeley could have hardly expected that the family of his partner, and the hands employed, could be supported, except in the manner disclosed by the case ; and he himself, in two or three instances, made settlements in which accounts against Marckres individually were allowed.

*Judgment for the defendants.*